In the United States Court of Appeals
for the Seventh Circuit
-

No. 25-2967

TIMOTHY FREEHAN, JOSEPH GRODY and FULL PULL WINES, LLC,
*Plaintiffs - Appellants*,

vs.

CYNTHIA BERG, Commissioner and Chairman of the
Illinois Liquor Control Commission, *et. al.*,
*Defendants - Appellees*,

and

WINE AND SPIRITS DISTRIBUTORS OF ILLINOIS,
*Intervening Defendant - Appellee.*

---

On appeal from the United States District Court for the Northern District of Illinois, No. 1:22-cv-04956, Hon. Jeremy C. Daniel, District Judge

---

**Opening Brief of Plaintiffs-Appellants**

---


James A. Tanford, *Counsel of record**
Robert D. Epstein
Epstein Seif Porter & Beutel, LLP
50 S. Meridian St., Suite 505
Indianapolis, IN 46204
Tel. (317) 639-1326
Fax (317) 638-9891
rdepstein@aol.com
tanford@iu.edu

*Attorneys for Appellants*

*Professor Emeritus, Indiana Univ. Maurer School of Law

## Circuit Rule 26.1 Disclosure Statement

Appellate Court No: 25-2967

Short Caption: Timothy Freehan, et al., v. Cynthia Berg, et al.

[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Timothy Freehan, Joseph Grody and Full Pull Wines, LLC

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Epstein Seif Porter & Beutel, LLP
Moor Law Office, PC
[James Tanford is Professor Emeritus, Indiana Univ. Maurer School of Law]

(3) If the party or amicus is a corporation:

I) Identify all its parent corporations, if any: None

ii) List any publicly held company that owns 10% or more of the party's stock: None

---

Attorney's Signature: s/ James A. Tanford Date: 01/14/2026

Attorney's Printed Name: James A. Tanford

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes _X_ No ___

Address: Epstein Seif Porter & Beutel LLP
50 S Meridian St., Suite 505
Indianapolis IN 46204

Phone Number: (812) 325-7374 Fax Number: (317) 638-9891

E-Mail Address: tanford@iu.edu

## Table of Contents

Disclosure statement . . . . . . . . . . I

Table of authorities . . . . . . . . . . iii

Jurisdictional statement . . . . . . . . . . 1

Statement of the issues . . . . . . . . . . 1

Statement of the case . . . . . . . . . . 2

A. The law at issue . . . . . . . . . . 3

B. Proceedings below . . . . . . . . . . 5

C. Statement of facts . . . . . . . . . . 6

Summary of argument . . . . . . . . . . 16

Argument . . . . . . . . . . 19

I. Standard of Review . . . . . . . . . . 19

II. Plaintiffs have standing . . . . . . . . . . 19

III. The Illinois law that prohibits out-of-state retailers from shipping wine to consumers, while simultaneously allowing in-state retailers to do so, is unconstitutional . . . . . . . . 20

A. The framework for analyzing the constitutionality of a state liquor law . . . 20

B. The ban on interstate wine shipping is discriminatory . . . . . . . . . . 23

C. The State has not met its burden to justify banning this one kind of online ordering when it allows others . . . . . . . 25

1. Illinois' only interests are youth access and tax collection . . . . . . . . . . 28

2. The State has not shown that interstate shipping by out-of-state wine retailers would increase youth consumption or harm tax collection . . . . . . 30

3. Other potential state interests do not justify the retailer shipping ban. . 35

IV. Remedy . . . . . . . . . . 38

Conclusion . . . . . . . . . . 40

Certification of word count . . . . . . . . . . 40

Certification as to appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 1
Judgment [Doc. No. 151] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 2
Memorandum Opinion and Order [Doc. No 150] . . . . . . . . . . . . . . . . . . . . . App. 3

## Table of Authorities

**Cases**:

*Al-Alamin v. Gramley,* 926 F.3d 680 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 39

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . 22

*Bridenbaugh v. Freeman-Wilson*, 227 F.3d 828 (7th Cir. 2000) . . . . . . . . . . . . . . . 20

*Califano v. Westcott*, 443 U.S. 76 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Chicago Wine. Co. v Braun,* 148 F.4th 530 (7th Cir. 2025). . . . . . . . . . . . . 19, 22, 24

*Cook, Inc. v. Boston Scientific Corp.,* 333 F.3d 737 (7th Cir. 2003) . . . . . . . . . . . . 39

*Cross v. U.S.*, 892 F.3d 288 (7th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Elrod v. Burns*, 427 U.S. 373 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367 (2024). . . . . . . . . . . . . . . . . . . 19

*GMC v. Tracy*, 519 U.S. 278 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Granholm v. Heald,* 544 U.S. 460 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Healy v. Beer Inst.*, 491 U.S. 324 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Horne v. Electric Eel Mfr. Co.,* 987 F.3d 704 (7th Cir. 2021) . . . . . . . . . . . . . . . . . 19

*Leavitt v. Jane L.*, 518 U.S. 137 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Lebamoff Enterpr., Inc. v. Rauner,* 909 F.3d 847 (7th Cir. 2018) . . . . . . . . . . *passim*

*Lebamoff Enterpr., Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020) . . . . . . . . . . . . 22

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . 19

*Maddux v. Blagojevich*, 911 N.E.2d 979 (Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . 35

*Massachusetts v. EPA,* 549 U.S. 497 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Morris v, BNSF Ry. Co.*, 969 F.3d 753 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . 38

*Murthy v. Missouri,* 144 S.Ct. 1972 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Seymore*, __ N.E.3d __, 2025 WL 3482895 (Ill.. Dec. 4, 2025) . . . . . . . . . 35

*Preston v. Thompson*, 589 F.2d 300 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Sarasota Wine Market, LLC v. Schmitt,* 987 F.3d 1171 (8th Cir. 2021) . . . . . . . . . 22

*So. Wine & Spirits, Inc. v. Div. of Alco. & Tobacco Control,* 731 F.3d 799 (8th Cir. 2013) . . . . . . . 22

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449 (2019) . . . . *passim*

*U.S. v. McClinton*, 23 F.4th 732 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . 23

*West Lynn Creamery, Inc. v. Hardy*, 512 U.S. 186 (1994) . . . . . . . . . . . . . . . . . . . 24

*Zaragoza v. Garland,* 52 F.4th 1006 (7th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . 23

**Constitution, Statutes and Rules:**

U.S. Const. art. I, § 8, cl. 3 (Commerce Clause) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. XXI, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C, § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

235 ILCS 5/3-14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

235 ILCS 5/5-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 28, 31, 37

235 ILCS 5/6-1.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

235 ILCS 5/6-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

235 ILCS 5/6-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

235 ILCS 5/6-29.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28, 35, 39

11 Ill. Admin. Code 100.480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 39

**Other authorities**

AM. HERITAGE DICTIONARY (5th ed. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Walmart website, https://www.walmart.com/ store-directory . . . . . . . . . . . . . . . . . . 37

## Jurisdictional Statement

**1. District court jurisdiction**. Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that provisions in the Illinois Liquor Control Code violate the Commerce Clause. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), which confer original jurisdiction on district courts to hear suits alleging the violation of Constitutional rights. The defendants are state officials responsible for enforcing the laws at issue and are sued only for declarative and injunctive relief, so they are not entitled to Eleventh Amendment immunity. *Ex Parte Young,* 209 U.S. 123 (1908).

**2. Court of appeals jurisdiction**. The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291. This is an appeal from a final judgment disposing of all claims and terminating the case, entered on September 25, 2025. [Doc. No. 151]. Plaintiffs filed a timely notice of appeal on October 20, 2025. [Doc. No. 152].

## Statement of the Issue

Illinois prohibits out-of-state retailers from shipping wine directly to consumers while simultaneously allowing in-state retailers to do so. Under Supreme Court precedent balancing the competing interests of the Commerce Clause[1] and Twenty-first Amendment,[2] discriminatory liquor laws are unconstitutional unless the State can prove that the law advances public health or safety and that nondiscriminatory alternatives would be insufficient. The issue is whether Illinois has met this burden.

---

[1] "The Congress shall have the power [to] regulate commerce ...among the several states." U.S. CONST., ART. I, § 8, cl. 3.

[2] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST., AMEND. XXI, §2.

## Statement of the Case

Plaintiffs challenge the constitutionality of an Illinois law that prohibits out-of-state retailers from shipping wine to consumers while simultaneously allowing in-state retailers to do so. Whether this difference in treatment is unconstitutional depends on the interplay between the dormant Commerce Clause, which prohibits discrimination against out-of-state economic interests, and § 2 of the Twenty-first Amendment, which gives states broad latitude to regulate the sale of alcohol within their borders. The proper balance between those two provisions has been set in three cases: *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019); *Granholm v. Heald,* 544 U.S. 460 (2005), and *Lebamoff v. Rauner*, 909 F.3d 847 (7th Cir. 2010). They hold that "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Granholm,* 544 U.S. at 487; *Tenn. Wine,* 588 U.S. at 533; *Lebamoff,* 909 F.3d at 854. The Twenty-first Amendment can save a discriminatory law only if the State "show[s] that the differential treatment is *necessitated* by permissible Twenty-first Amendment interests." *Lebamoff,* 909 F.3d at 856 (emphasis in original).

This same Illinois ban on retail shipping was previously challenged in *Lebamoff*. This Court held that the law was discriminatory and remanded the case to determine whether Illinois could justify requiring a local presence for state-wide mail-order sales. 909 F.3d at 856. That determination was never made because the case became moot when Lebamoff Enterprises went out of business and the consumer plaintiff could not continue for medical reasons. See Docket Nos. 166-167, Case No. 1:16-cv-8607 (N.D. Ill. 2021). The current case presents the issue left undecided in *Lebamoff* -- whether the State can prove that discrimination against out-of-state wine shippers is necessary

to protect public health or safety because nondiscriminatory alternatives would be insufficient. *See Tenn. Wine*, 588 U.S. at 540; *Granholm,* 544 U.S. at 489.

**A. The law at issue**

Plaintiffs challenge one discriminatory feature of Illinois' alcohol laws. Illinois allows in-state retailers to sell wine online and ship it to consumers statewide, but prohibits out-of-state retailers from doing so. A retailer physically located in Illinois may obtain an off-premises retailer's licenses which includes the privilege to engage in statewide mail-order sales. 235 ILCS 5/5-1(d).[3] In order to obtain this license, the retailer must first have obtained a local license for the same premises, 235 ILCS 5/3-14,[4] and a local license is available only for premises in Illinois. 235 ILCS 5/6-2(a).[5] Retailers whose premises are outside Illinois cannot get a local license and therefore cannot get the same state license which would allow them to sell and ship wine to consumers. Answer ¶¶ 22-23 [Doc. No. 43]. No other license or direct-shipping permit

---

[3]"A retailer's license shall allow the licensee to sell and offer for sale at retail, only in the premises specified in the license, alcoholic liquor for use or consumption, but not for resale in any form. Except as provided in Section 6-16 [sales to minors], 6-29 or 6-29.1 [sales by wineries], nothing in this Act shall deny, limit, remove, or restrict the ability of a holder of a retailer's license to transfer or ship alcoholic liquor to the purchaser for use or consumption subject to any applicable local law or ordinance. For the purposes of this Section, "shipping" means the movement of alcoholic liquor from a licensed retailer to a consumer via a common carrier..."

[4]"Nothing contained in this Act shall, however, be construed to permit the State Commission to issue any license ... unless the person applying for such license shall have obtained a local license for the same premises. ... When such person has obtained a local license and has made application to the State Commission in conformity with this Act and paid the license fee provided, it shall be the duty of the State Commission to issue a retailer's license to him..."

[5]"[N]o license of any kind issued by the State Commission or any local commission shall be issued to: (1) A person who is not a resident of any city, village or county in which the premises covered by the license are located."

is available to an out-of-state retailer. Without some kind of permit, they are prohibited from shipping wine directly to consumers, 235 ILCS 5/6-29.1(b),[6] and consumers are prohibited from having it shipped to them. 11 Ill. Adm. Code 100.480.[7] The State has agreed that this is a correct description of the law. Def. Admission Nos.1-3, 7 [Doc. No. 110-7]; Def. Answer ¶¶ 20-23 [Doc. No. 43].

It is also important to identify what is *not* being challenged. Many states, including Illinois, channel most alcohol sales through a "three-tier system" which separates producers, wholesalers and retailers into distinct tiers and requires separate licenses for each. Many of those licenses are exclusive, meaning that the holder may operate in only one tier, in order to prevent "tied houses" where a producer controlled (and could manipulate) retail sales. *Lebamoff*, 909 F.3d at 850. The Supreme Court has said that a state's decision to adopt a the three-tier system, like other ways the state could regulate alcohol, is presumptively legitimate under the Twenty-first Amendment. *Granholm*, 544 U.S. at 489. But the Court has also cautioned that "[a]lthough *Granholm* spoke approvingly of that basic model, it did not suggest that § 2 sanctions every discriminatory feature that a State may incorporate into its three-tiered

---

[6]"Any person ... distributing, or selling alcoholic liquor who knowingly ships or transports or causes the shipping or transportation of any alcoholic liquor from a point outside this State to a person in this State who does not hold a manufacturer's, distributor's, importing distributor's, or non-resident dealer's license issued by the Liquor Control Commission, other than a shipment of sacramental wine to a bona fide religious organization, a shipment authorized by Section 6-29 [or] subparagraph (17) of Section 3-12 [shipments by wineries] is in violation of this Act."

[7]"A person is permitted to import alcoholic liquor into this State for his or her personal and non-commercial use without first obtaining a license to import under the following conditions ... (A) The total volume to be imported per year is less than one gallon."

scheme." *Tenn. Wine,* 588 U.S. at 535. Courts must "analyze [each] provision on its own." *Id.* at 539. Each discriminatory feature must be independently justified with concrete evidence that it is reasonable necessary to protect public health or safety. *Lebamoff*, 909 F.3d at 855-56. Plaintiffs are not challenging the entire three-tier system, nor Illinois' basic right to regulate alcohol, require licenses, or insist that out-of-state retailers consent to its jurisdiction, and pay taxes. We challenge one discriminatory feature of Illinois law -- the rule that only retailers in Illinois may sell wine online and ship it to consumers.

**B. Proceedings below**

1. This case was filed October 1, 2021, in the Central District of Illinois. Plaintiffs sued Cynthia Berg, Chair of the Illinois Liquor Control Commission, and other state officials in their official capacities, alleging that the ban on interstate wine shipping was unconstitutional. Complaint [Doc. No. 1]. An amended complaint was filed February 8, 2022. [Doc. No. 12].

2. Wine & Spirits Distributors of Illinois ("WSDI") intervened as a defendant on July 5, 2022. Text Order [no Doc. number].

3. Venue was transferred to the Norther District of Illinois on September 12, 2022. [Doc. No. 24].

4. Answers to the amended complaint were filed by the state defendants on October 31, 2022, [Doc. No. 43] and by WSDI on January 17, 2023 [Doc. No. 49].

5. Marcum was dismissed as a plaintiff on May 1, 2023 [Doc. No. 53].

6. The case was assigned to Hon. Jeremy Daniel on June 27, 2023 [Doc. No. 58].

7. The court ruled on several motions to limit expert testimony on August 23, 2024

[Doc. No. 105]. To the extent that any of those rulings are relevant to this appeal, they will be discussed in the briefs.

8. All parties filed motions for summary judgment with supporting evidence [Doc. Nos. 108-132]. Plaintiffs objected to much of the State's proffered evidence as inadmissible opinions and hearsay, which are set out in their response to defendants' statement of facts [Doc. No. 126]. To the extent that the defendants cite to any of this evidence in their brief, plaintiffs will raise specific objections in their reply.

9. No hearing was held. On September 25, 2025, the court granted defendants' motions for summary judgment, denied plaintiffs' motion for summary judgment, and terminated the case. App. 2 [Doc. Nos. 150-151].

9. Plaintiffs filed a timely notice of appeal on October 20, 2025 [Doc. No. 152].

**C. Statement of Facts**

1. Plaintiffs Timothy Freehan and Joseph Grody are residents of Cook County, Illinois. They are regular purchasers, collectors and consumers of wine. They have attempted to buy wine from out-of-state retailers and have it shipped to them but have been unable to do so because Illinois law prohibits such transactions. This has caused them to shift some purchases they would otherwise have made from out-of-state retailers to less desirable wine from Illinois retailers, but has not caused them to consume less wine. They intend to purchase wines from out-of-state retailers and have them shipped to their residences in Illinois if it becomes lawful to do so. Freehan Decl. ¶¶ 1-10 [Doc. No. 110-2]; Grody Decl. ¶¶ 1-9 [Doc. No. 110-3].

2. There is a greater selection of wine available from out-of-state retailers that sell online than at local wine stores in Illinois. Freehan Decl. ¶¶ 8, 11- 13 [Doc. No.110-2]; Zitarelli Decl. ¶¶ 5-7, 11 [Doc. No. 110-4]; Wark Report ¶¶ 18-27 [Doc. No. 110-31]. All wine sold in the United States must be approved by the federal Alcohol and Tobacco Tax and Trade Bureau. The TTB authorized 454,974 wines for sale in the U.S. from 2019-22. Because many older wines are still available for sale somewhere in the U.S. at any given moment the total number of available wines amounts to more than 1,000,000 individual wines. Local wine stores carry only a fraction of that number. Binny's Beverage Depot, one of the largest in the Chicago area, carries only 6995 wines. Wark Report ¶¶ 19-22 [Doc. No. 110-31].

3. There are roughly 400,000 licensed retailers of alcoholic beverages in the United States. Kerr Report ¶ 37 [Doc. No.110-34]. However, the number that sell online and ship to consumers is only 500-800. In states that license out-of-state retailers to ship wine directly to consumers, no more than a few hundred have obtained direct shipper licenses. Wark Report ¶ 37 [Doc. No.110-31]; State Licenses [Doc. No. 110-14].

4. About 62% of the wines approved for sale in the U.S. are imported from other countries. Although some American wines can be ordered directly from the winery, foreign wines can be purchased only at retail wine stores. Wark Report ¶ 23 [Doc. No. 110-31]; Def. Answer to Interrog. No. 11 [Doc. No. 110-7].

5. Plaintiff Full Pull Wines, LLC, operates a retail wine store in Seattle, Washington, under a Washington license. It is also licensed to sell and ship wine to consumers in North Dakota. Full Pull was named the retailer of the year for 2015 by

the Washington State Wine Awards. It is owned by Paul Zitarelli, the former wine writer for Seattle Magazine from 2013-19 and the author of "36 Bottles of Wine." Zitarelli is regularly consulted by wine consumers for advice and recommendations, both in person and by telephone and email. Full Pull has received requests from potential customers that it sell and ship wine to them in Illinois, but has had to decline those sales because Illinois prohibits them. As a result, it has lost sales and profits and the opportunity to expand its customer base. Full Pull intends to ship wines directly to consumers in Illinois if it becomes lawful, would obtain an Illinois license if one were available, and would comply with Illinois requirements including filing sales reports, remitting taxes, consenting to jurisdiction and audits, and verifying the age of purchasers. Zitarelli Decl. ¶¶ 1-4, 9-13 [Doc. No. 110-4]; Full Pull Licenses [Doc. Nos. 110-5/6].

6. Defendant Cynthia Berg is the Chair of the Illinois Liquor Control Commission, which enforces the Illinois liquor control laws, including the ones challenged in this lawsuit. Defendants Thomas Gibbons, Patricia Pulido Sanchez, Melody Spann Cooper, Julieta LaMalfa, and Steven Powell are Commissioners of the Illinois Liquor Control Commission. They and other Illinois officials intend to enforce the laws prohibiting out-of-state retailers from shipping wine to consumers. Def. Admission Nos. 5-6 [Doc. No. 110-7]; Def. Answer ¶¶ 10-16, 18 [Doc. No. 43].

7. A wine retailer located in Illinois can obtain an off-premises license from Defendants which includes the privilege to sell wine online from its inventory and ship it to Illinois consumers statewide. The defendants will issue that license only to wine

retailers whose premises are located in the State of Illinois. They will not issue any kind of license, permit or permission to wine retailers whose premises are located outside Illinois that would allow them to sell and ship wine to Illinois consumers. Def. Admission Nos.1-3, 7 [Doc. No. 110-7]; Def. Answer ¶¶ 20-23 [Doc. No. 43].

8. Full Pull Wines is not located in Illinois. Zitarelli Decl. ¶2 [Doc. No. 110-4]. It is not eligible for any kind of Illinois license that would allow it to ship to consumers and is prohibited by law from shipping wine from its premises in Washington directly to consumers in Illinois. Consumers in Illinois are prohibited from personally importing more than one gallon of wine per year without special approval. Def. Admission No. 4 [Doc. No. 110-7]; Def. Answer ¶¶ 23-24 [Doc. No. 43].

9. Some wine retailers located outside of Illinois, including Full Pull, have wines for sale that are not available at Illinois retailers, including rare wines, allocated wines, older vintages, special commemorative wines, wines from new and small producers, and other limited-supply wines, and they would sell and ship them to Illinois if it were lawful. Freehan Decl. ¶¶ 8, 11, 13 [Doc. No. 110-2]; Grody Decl. ¶ 5 [Doc. No. 110-3]; Zitarelli Decl. ¶¶ 6-7, 11 [Doc. No. 110-4]; O'Leary Report ¶¶ 14-15, 18, 26, 28 [Doc. No. 110-32].

10. Among the wines Freehan could not find in Illinois but were offered for sale online by out-of-state retailers are Louise Brison Chardonnay de la Cote des Bar Brut Champagne, 2015 or 2016, Louise Brison Pinot Noir de la Cote des Bar, 2014, Edi Keber Collio Bianco, 2021, Miani Chardonnay Colli Orientale del Friuli, 2021, Miani Merlot, Colli Orientale del Friuli, 2018, Ulysse Collin Les Pierrieres Blanc de Blanc,

2018, 2019, or 2022. Freehan Decl. ¶ 13 [Doc. No. 110-2].

11. Local retailers generally do not carry rare, hard-to-find, and older vintage wines. Older vintages, rare and collectible wines must be properly stored and shipped under temperature-controlled conditions and few retailers have the facilities to do so. They sell slowly and take up shelf space that could be used for faster selling wines. They are expensive and require a substantial per-bottle investment. Wark Report ¶ 25 [Doc. No. 110-31]. A single bottle of Domaine de la Romanee-Conti Grand Cru, often considered the best wine in France, can cost $18,000. A bottle of a classic 1982 or 2000 Chateau Lafite-Rothschild can cost $2000. Freehan Decl. ¶ 14 [Doc. No. 110-2].

12. One of the best known wine retailers that carries unusual wines and ships them to other states is K&L Wine Merchants in California. It does not currently ship to Illinois because it is unlawful. Freehan Decl. ¶ 8 [Doc. No. 110-2]; K&L Policy [Doc. No. 29].

13. The ability of a retailer to sell online and ship to consumers is a commercial advantage. Home delivery is more convenient than in-person shopping, especially for consumers with age-related mobility issues or who are concerned about exposure to Covid. Wark Report ¶¶ 12-13 [Doc. No. 110-31]; Zitarelli Decl. ¶ 10 [Doc. No. 110-4].

14. For wine available only at out-of-state retailers, the ability to ship is critical. Consumers like Freehan cannot afford the time and expense of taking time off from work and traveling in person to out-of-state wine retailers in California or New York to purchase a few bottles of hard-to-find wine and transporting them home. Freehan Decl. ¶ 15 [Doc. No. 110-4].

15. Prices of limited-supply wines vary from retailer to retailer. Freehan looked for Domaine du Pegau Chateauneuf-du-Pape Cuvee da Capo, vintages 2015 and 2020. The prices listed online for the 2015 vintage varied from $299-564 per bottle and for the 2020 vintage from $299-564 per bottle. Freehan Decl. ¶ 16 [Doc. No. 110-4].

16. The average price of wine sold in the U.S. is $10-15 per bottle. It is almost always cheaper to buy it at a local Illinois retailer than by ordering it online because shipping costs $3-15 per bottle, depending on the shipping method. Wark Report ¶¶ 13, 36 [Doc. No. 110-31]; Zitarelli Decl. ¶ 8 [Doc. No. 110-4]; FedEx Rates [Doc. No. 110-33]. The average price of wine ordered for direct shipping is $45 a bottle. Wark Report ¶ 13 [Doc. No. 110-31].

17.In his report, defense expert Kerr speculated that, in theory, if retailers from states with lower excise tax rates were allowed to ship wine to Illinois consumers, the wine might be cheaper and cause increased consumption. He presented no data that wine sold online was actually cheaper than in Illinois. Kerr Report ¶¶ 56-57 [Doc. No. 110-34]. In fact, wine is available at supermarkets in Illinois for less than $5.00 per bottle for any consumer motivated by low prices. Freehan Decl. ¶ 17 [Doc. No. 110-2].

18. Connecticut maintains higher prices by requiring out-of-state retailers who ship to consumers to comply with state minimum pricing laws, and state officials are unaware of any difficulties getting out-of-state retailers to honor its minimum pricing restrictions. [Doc. No. 110-14].

19. Online sales and shipment of wine from out-of-state retailers to consumers has caused no significant public health or safety problems in the fourteen states that have

been allowing it over the past fifteen years. Those states do not have higher rates of wine consumption. NIH data [Doc. Nos. 110-19/20]. They do not have higher rates of problematic behavior associated with alcohol such as traffic fatalities, NHTSA data [Doc. Nos. 110-10/11]; aggravated assaults, FBI data [Doc. No. 110-25/26], or domestic violence. Domestic Violence data [Doc. No. 110-28]. Plaintiffs' wine industry expert said that he has not heard of any reported incidents of unsafe wine being shipped. Wark Report ¶ 35 [Doc. No. 110-31]. Regulators from states that allow retailer shipping report no problems. Statements from State Officials [Doc. No. 110-15].

20. Online wine purchases are not a significant source of alcohol by underage persons. SAMHSA Survey [Doc. No. 110-9]; Wark Report ¶ 15 [Doc. No. 110-31]. Minors tend to want instant gratification rather than the delay to receive a shipment and they can acquire alcohol more cheaply and easily from local sources. FTC Report at 33 [Doc. No. 110-12]; Wark Report ¶ 17 [Doc. No. 110-31].

21. Wine can be ordered online and shipped from out-of-state wineries in 44 states. Wark Report ¶ 23 [Doc. No. 110-31]. The widespread availability of online ordering has not increased consumption among underage persons, which has steadily declined over the past 20 years. SAMHSA Report [Doc. No. 110-8].

22. Illinois allows out-of-state wineries to sell online and ship to consumers with a wine shipper license and has no evidence that any minors have obtained alcohol from them or that any other problem has occurred. Def. Ans. to Interrog. Nos. 3-4 [Doc. No. 110-7]. The license requires a bond to assure tax payments and periodic reports. Marijan Decl. ¶¶ 24-27 [Doc. No. 115-1, PageID 1483-84].

23. Illinois allows in-state retailers to use common carriers and third-party services to deliver wine to consumers as long as the person making the delivery verifies the age of the recipient. However, there is no reporting or electronic record required for verification. O'Leary Report ¶¶ 35-36 [Doc. No. 110-32].

24. Online age verification services provided by AgeChecker, IDology, and other vendors are readily available to direct shippers. A study by Zero Link/VinoShipper, which analyzed data of an estimated 634,000 attempted wine purchases over a three-year period, discovered that minors accounted for only 943 (00.15%) of those attempts and all were successfully identified by the IDology age verification system as underage persons. The IDology system verifies the age of attempted buyers by public records. If the purchaser's name, age, and address do not match public records for adults, the transaction is rejected. Wark Report ¶¶ 15, 17 [Doc. No. 110-31]; O'Leary Report ¶ 34 [Doc. No. 110-32].

25. Forty-four states and the District of Columbia allow out-of-state wineries to sell and ship wine directly to consumers and have not publicly reported any health or safety problems caused by interstate sales. Wark Report ¶ 29 [Doc. No. 110-31]; Correspondence from regulators [Doc. No. 110-15]. The defendants conceded in discovery that they are unaware of any actual incidents in the past three years in which wine shipped to a consumer by a licensed winery caused or was a significant factor in an alcohol-related public health or safety problem, including traffic accidents, crime, workplace absenteeism, or domestic violence. Def. Ans. to Interrog. No. 6 [Doc. No. 110-7].

26. Fourteen states have allowed out-of-state retailers to sell and ship wine directly to consumers over the past fifteen years. Wark Report ¶ 30 [Doc. No. 110-31]; List of States [Doc. No. 110-27]. They report no public health or safety problems. Wark Report ¶ 35 [Doc. No. 110-31]. The defendants conceded in discovery that they have no data or other concrete evidence that direct shipment of wine by retailers has caused a health or safety problem in any of those states, such as tainted or unsafe wine, increased consumption, reduced tax revenue or other regulatory difficulties -- other than the information supplied by their expert witness, Dr. Kerr. Def. Ans. to Interrog. Nos. 7-10 [Doc. No. 110-7].

27. Defense expert Kerr opined that consumption-related public health problems could potentially be caused if out-of-state retailers were allowed to sell directly to consumers, but he did not say that any such problems have actually occurred. He did not present any concrete evidence, data, or studies that show that direct shipment of wine by retailers has caused any alcohol-related problems, involved tainted or unsafe wine, increased consumption, reduced tax revenue or caused regulatory difficulties. Kerr Rpt. ¶¶41-64 [Doc. No. 110-34]. Dr. Kerr has admitted that there are no studies on the impact of direct wine shipping on alcohol consumption. Kerr Indiana Report ¶ 34 [Doc. No. 110-35].

28. Although defense expert Kerr predicts that Illinois' high excise tax rate will theoretically reduce consumption, Report ¶¶ 54, 56 [Doc. No. 110-34], the actual data show no correlation between excise tax rates and wine consumption rates. Tax/consumption data [Doc. No. 110-17/18]. One peer-reviewed study showed that when

Illinois previously raised excise taxes, it caused consumers to switch to less expensive products but did not reduce consumption. O'Leary Report ¶ 38 [Doc. No. 110-32]. When prices go up in Illinois, purchasers can buy in bordering states. Williams Decl. ¶ 32 [Doc. No. 115-1, PageID 1474].

29. Although state officials inspect the premises of in-state retailers and conduct on-site sting operations to deter sales to minors, they have no established inspection, enforcement or tracking programs aimed at detecting whether wine is being shipped to underage persons, O'Leary Report ¶¶ 35-36 [Doc. No. 110-32], or whether tainted or unsafe wine is being shipped to consumers. Def. Ans. to Interrog. Nos. 12-13 [Doc. No. 110-7]; O'Leary Report ¶ 17 [Doc. No. 110-32]. Actual on-site inspections of any wine seller is rare and does not include opening or testing any wine for safety. O'Leary Report ¶¶ 21-25 [Doc. No. 110-32]. Every state has similar inspection and enforcement procedures. Report to Congress [Doc. No. 125-1].

30. State officials monitor sales and shipments by out-of-state wineries entirely through reports from the wineries and carriers, and they collect taxes through tax returns filed by the shipper. Def. Ans. to Interrog. Nos. 17-18 [Doc. No. 110-7].

31. Other states that allow retail wine shipping monitor those shipments and collect taxes through a permit system in which out-of-state shippers consent to jurisdiction, limit sales volume, submit reports and taxes, allow audits, and use common carriers that verify age on delivery. Wark Report ¶¶ 31-33 [Doc. No. 110-31]. A permit system has been endorsed by the National Conference of State Legislature, Model Bill [Doc. No. 117], and the FTC. Report at 3, 40 [Doc. No. 110-12]

32. Defense witnesses speculate that Illinois might lose revenue if direct shipping were allowed, but a Maryland study showed that tax revenues increased when out-of-state wine sellers were allowed to obtain licenses and ship to consumers because some who had previously shipped unlawfully without paying taxes were brought into the system. Maryland Report at 4 [Doc. No. 110-16]. In fact the opposite is true. States that do not license out-of-state shippers lose tax revenue on illegal shipments they could have received if they licensed shippers and required that taxes be paid. O'Leary Report ¶ 33 [Doc. No. 110-32].

33. Although defense expert Kerr predicts that allowing direct shipping of wine will cause high rates of risky sexual behavior among young people, leading to more sexually transmitted diseases and teen pregnancies, Kerr Report ¶ 74 [Doc. No. 110-34], the data show no correlation between direct shipping and STD rates, CDC data [Doc. No. 110-21/22]; or between direct shipping and teen pregnancies. CDC data [Doc. No. 110-23/24].

**Summary of Argument**

Plaintiffs challenge the constitutionality of the Illinois law that prohibits out-of-state retailers from selling wine online and shipping it to Illinois consumers while simultaneously allowing in-state retailers to make such mail-order sales. Whether this difference in treatment is unconstitutional depends on the interplay between the dormant Commerce Clause, which prohibits discrimination against interstate commerce, and § 2 of the Twenty-first Amendment, which gives states latitude to regulate the sale of alcohol within their borders. The proper balance between those two

provisions has been set in *Tenn. Wine,* 588 U.S. 504; *Granholm v. Heald,* 544 U.S. 460; and *Lebamoff v. Rauner*, 909 F.3d 847. They hold that despite the apparent broad grant of authority given to states by the Twenty-first Amendment, "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Granholm,* 544 U.S. at 487; *Tenn. Wine,* 588 U.S. at 533; *Lebamoff,* 909 F.3d at 854. Constitutionality is determined by "a two-step inquiry: (1) Does the state law violate the Commerce Clause, and if so, (2) Does the Twenty-first Amendment save the otherwise impermissible law? *Lebamoff,* .909 F.3d at 852. In order to justify a discriminatory law, the State must "show that the differential treatment is *necessitated* by permissible Twenty-first Amendment interests." *Id.* at 856 (emphasis in original).

This Court has already ruled that the law at issue is facially discriminatory, *Lebamoff*, 909 F.3d at 852-53, and the State admits that an Illinois retailer can ship wine to consumers but an out-of-state retailer cannot. Stmt. of Facts *supra*, ¶¶ 7-8 ("Facts"). Therefore, the outcome turns on step two -- whether the State can prove that the differential treatment is necessitated by permissible Twenty-first Amendment interests. Permissible interests are those that "address alcohol-related public health and safety issues." *Tenn. Wine,* 588 U.S. at 539. They do not include administrative interests such as facilitating orderly market conditions and ensuring regulatory accountability. *Granholm*, 544 U.S. at 492. To establish reasonable necessity, the State must present "'concrete evidence' showing that the [law] actually promotes public health or safety [and] that nondiscriminatory alternatives would be insufficient to further those interests." *Tenn. Wine*, 88 U.S. at 540; *Granholm,* 544 U.S. at 489.

It is the State's burden to justify discrimination, *Granholm*, 544 U.S. at 492, and Illinois has not done so. The State admitted in discovery that it has no concrete facts or data to show that shipments of wine from out-of-state retailers pose any kind of public-safety threat, Facts ¶¶ 25-26, and their expert, Dr. Kerr, admits no such evidence exists. Facts ¶ 27. Indeed, what little evidence there is shows the opposite -- interstate retail sales have caused no public health or safety problems in the fourteen states that allow them. Those states do not have higher rates of consumption, more youth access, no alcohol-related social problems, and no influx of unsafe products. Facts ¶¶ 19-21, 33. Banning sales by out-of-state retailers cannot advance public health and safety when they pose no threat to begin with.

Illinois already allows out-of-state wineries to ship to consumers and has not experienced any problems. Facts ¶ 22. It monitors and regulates interstate wine shipments through a permit system. Out-of-state winery shippers consent to jurisdiction, report sales, pay taxes, allow audits, and use common carriers that verify age on delivery. Facts ¶ 22. The Supreme Court and the National Conference of State Legislatures have endorsed the permit system as a reasonable nondiscriminatory alternative to a total ban. *Granholm,* 544 U.S. at 491-92. The State has no concrete evidence to show that the permit system would suddenly become ineffective in this one situation.

The Twenty-first Amendment cannot save a discriminatory law when the record is "devoid of any 'concrete evidence' showing that the [law] actually promotes public health or safety [or] that nondiscriminatory alternatives would be insufficient to

further those interests." *Tenn. Wine,* 588 U.S. at 540. In the absence of such evidence, "a trans-border delivery rule that discriminates against interstate commerce is forbidden." *Chicago Wine. Co. v . Braun*, 148 F.4th 530, 534 (7th Cir. 2025) (*per curiam*) (Easterbrook concurring). Illinois' ban on interstate retail wine shipments is unconstitutional.

## Argument

### I. Standard of review

The Court of Appeals reviews the district court's grant of summary judgment *de novo,* examining the record in the light most favorable to the nonmovants (the Plaintiffs-Appellants) and construing all reasonable inferences from the evidence in their favor. Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A); *Horne v. Electric Eel Mfr. Co., Inc.*, 987 F.3d 704, 713 (7th Cir. 2021). An issue of fact is material if it could affect the outcome of the case under the prevailing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Plaintiffs have standing

In every case, Plaintiffs must establish standing: (1) injury, (2) causation and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Where a plaintiff is the object of a restrictive regulation and the defendant is the official responsible for its enforcement, as in this case, "there is ordinarily little question" that the plaintiff has standing to challenge that regulation. *Id.* at 561-62; *FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367, 380-81 (2024). There is even less question here

because this Court has previously held that consumers have standing to challenge a state law that prohibits them from having wine shipped from an out-of-state seller, *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000). Only one plaintiff needs standing to confer jurisdiction. *Massachusetts v. EPA,* 549 U.S. 497, 518 (2007).

The Plaintiffs are being denied their constitutional right to engage in interstate commerce, *GMC v. Tracy*, 519 U.S. 278, 286 (1997) and "[t]he loss of [constitutional rights], for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 373 (1976). Full Pull Wines loses sales and the opportunity to compete for business in Illinois. Facts ¶ 5. The consumer Plaintiffs are being prevented from obtaining the wine they want. Facts ¶ 1. These injuries are caused by the Illinois law making interstate sales unlawful, Facts ¶¶ 1, 5, and will be redressed if the Defendants are enjoined from enforcing them. Full Pull Wines has said it will then obtain any necessary licenses and sell wine to Illinois consumers, Facts ¶ 5, and the consumer Plaintiffs have said they will purchase from out-of-state retailers. Facts ¶1. No independent action of a third party is involved, so the Plaintiffs have standing. *See Murthy v. Missouri,* 144 S.Ct. 1972, 1986 (2024).

## III. The Illinois law that prohibits out-of-state retailers from shipping wine to consumers, while simultaneously allowing in-state retailers to do so, is unconstitutional

### A. The framework for analyzing the constitutionality of a state liquor law

The Supreme Court established the framework for assessing the constitutionality of a discriminatory state liquor law in *Granholm v. Heald,* its only case to deal

explicitly with interstate shipping. It held unambiguously that "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." 544 U.S. at 487. Discrimination against out-of-state liquor interests can be justified only if the State proves that discrimination is necessary to "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 489. "The 'burden is on the State.'" *Id.* at 492. The Court called this an "exacting standard." *Id.* at 493.

The Supreme Court reaffirmed the *Granholm* principles in *Tenn. Wine*.[8] It held that "the Court has repeatedly declined to read § 2 as allowing the States to violate the 'nondiscrimination principle.'" 588 U.S. at 533. Discrimination against out-of-state liquor interests can be justified only if the State presents "'concrete evidence' showing that the ... requirement actually promotes public health or safety [and] that nondiscriminatory alternatives would be insufficient to further those interests." *Id.* at 540. It rejected the argument that a lesser standard of review applied to laws regulating retailers, holding that '[t]here is no sound basis for this distinction." *Id.* at 533.

This circuit applied this same analytical framework in *Lebamoff*. It held that "'state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause.'" 909 F.3d at 854. Discrimination can be justified only if the State "can show that the differential treatment is *necessitated* by permissible Twenty-first Amendment interests." *Id.* at 856. The State must prove "why does it need to discriminate against

[8]It involved a residency requirement for a license, not interstate shipping.

interstate commerce" rather than use an even-handed licensing scheme. *Id.* The court rejected any argument that laws governing retailers were subject to a lesser standard of review. *Id.* at 854-55.

More recently, the Court issued a non-precedential decision by a two-judge panel[9] concerning local deliveries by in-state retailers. *Chicago Wine. Co. v Braun,* 148 F.4th 530 (7th Cir. 2025). It is not helpful because the two judges issued conflicting opinions,[10] and the case involved local deliveries rather than state-wide shipping. This Court has previously held that these are substantively different kinds of laws. A local presence is inherently tied to local deliveries, but becomes irrelevant once the state allows state-wide shipping by common carrier. *Lebamoff*, 909 F.3d at 857.

Some circuits have resisted the plain language of *Granholm* and *Tenn. Wine* and upheld discriminatory laws regulating retailers for a variety of reasons. *See B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022); *Lebamoff Enterpr., Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020); *Sarasota Wine Mkt., LLC v. Schmitt,* 987 F.3d 1171 (8th Cir. 2021).[11] They have taken the position that minor differences in phraseology in *Tenn. Wine* should be interpreted as overruling or weakening *Granholm* by eliminating

---

[9]The third judge was Michael Kanne who died while the case was under advisement.

[10]Judge Easterbrook found the law nondiscriminatory, 148 F.4th at 530, but Judge Scudder thought that it was discriminatory. *Id.* at 544-545. Judge Scudder would have affirmed the law because he thought Indiana had offered sufficient evidence to justify it but Judge Easterbrook would have struck it down had it been discriminatory. *Ibid.*

[11]The Eighth Circuit upheld Missouri's in-state presence law in *Sarasota Wine* because it thought the case was controlled by circuit precedent. *So. Wine & Spirits of Am., Inc. v. Div. of ABC,* 731 F.3d 799, (8th Cir. 2013). The Seventh Circuit has previously declined to follow that precedent. *Lebamoff*, 909 F.3d at 854, 857.

the requirement that the court address the feasibility of non-discriminatory alternatives, by reducing the state's burden of proof to a minimal one, and/or by changing the level of scrutiny from exacting to deferential -- even though the Court did not say it was retreating from *Granholm* and cited it favorably 39 times.

This Circuit should decline to follow them down that rabbit hole. The precedent in this circuit is that "We will not assume that the Supreme Court, without saying so directly, announced a new" rule. *Lebamoff*, 909 F.3d at 854. Lower courts "are required to follow the [Supreme] Court's precedents until the Court itself tells us otherwise," *U.S. v. McClinton*, 23 F.4th 732, 735 (7th Cir. 2022)*, citing Cross v. U.S.*, 892 F.3d 288, 303 (7th Cir. 2018), even if a precedent appears "out of sync" with intervening decisions. *Zaragoza v. Garland,* 52 F.4th 1006, 1012-13 (7th Cir. 2022).

**B. The ban on interstate wine shipping is discriminatory**.

This circuit has already ruled that the Illinois law at issue, that bans out-of-state retailers from selling wine online and shipping it to consumers (which it characterizes as "mail-order" sales), is discriminatory.

> Limiting licenses to in-state storefronts might make sense if all sales had to be on an in-person basis. The great majority of out-of-state retailers would have no use for such a license, and the failure of the state to offer it would raise no eyebrows. But once the license allows a store to ship product anywhere within the state, refusing to extend that privilege to out-of-state businesses is facially discriminatory

*Lebamoff*, 909 F.3d at 852-53.

Discrimination for Commerce Clause purposes simply means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter" and/or "deprives citizens of their right to have access to the

markets of other States on equal terms." *Granholm,* 544 U.S. at 572-73. The Illinois ban on interstate retail wine shipments is a textbook example. In-state retailers benefit by having exclusive privileges to sell wine online and ship it to consumers, which is a valuable commercial asset. Facts. ¶13. Out-of-state retailers are harmed by losing sales and business opportunities. Facts ¶ 5. Illinois consumers are denied access to wine sold in other states, including wine unavailable in Illinois, and shift some purchases to Illinois retailers. Facts ¶¶ 1-4. "[P]rotecting [local firms] from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery v. Healy*, 512 U.S. 186, 205 (1994).

In *Chicago Wine Co. v. Braun*, Judge Easterbrook would have found Indiana's law prohibiting out-of-state retailers from making local deliveries using their own vehicles and employees non-discriminatory. 148 F.4th at 530 (Easterbrook, J., concurring). This does not change the equation because discrimination is a question of the practical effect and operation of the law. *West Lynn Creamery, Inc. v. Healy*, 512 U.S. at 201. Local deliveries are inherently limited in range. As a practical matter any retailer who wanted to make local deliveries in South Bend would have to establish a second store there, whether their primary premises were in Indianapolis or Chicago. The Illinois law being challenged does not involve local delivery, but state-wide shipping, "[L]ocal deliveries are different in kind from state-wide deliveries through a carrier [because the] former delivery scheme is logically tied to an in-state presence (how else would the deliveries be accomplished locally?), while the latter form of delivery makes an in-state presence unnecessary." *Lebamoff*, 909 F.3d at 857.

If the product were anything other than alcohol, the law could be easily struck down because discrimination against interstate commerce is a "virtually *per se"* violation of the Commerce Clause. *Granholm,* 544 U.S. at 487. But when alcohol is involved, the Twenty-first Amendment is also implicated, so courts "engage in a different inquiry" than they would if it were a pure Commerce Clause case. *Tenn. Wine,* 588 U.S. at 539. This does not mean that discriminatory liquor laws are immune from scrutiny. *Tenn. Wine*, 588 U.S. at 532-33; *Healy v. Beer Inst.*, 491 U.S. 324, 344 (1989) (Scalia, J., concurring) (a liquor law's "discriminatory character eliminates the immunity afforded by the Twenty-first Amendment"). It means that we move to the second step of the analysis -- has the State justified the measure by proving with concrete evidence that the differential treatment is reasonably necessary to address alcohol-related public health or safety issues? *Tenn. Wine*, 588 U.S. at 533, 539; *Lebamoff*, 909 F.3d at 856.

**C. The State has not met its burden to justify banning this one kind of online ordering when it allows others**

The courts have repeatedly declined to read the Twenty-first Amendment as allowing states to violate the nondiscrimination principle of the Commerce Clause. *Tenn. Wine,* 588 U.S. at 533; *Granholm*, 544 U.S. at 487; *Lebamoff,* 909 F.3d at 854. The Amendment "is not a license to impose all manner of protectionist restrictions on commerce in alcoholic beverages." *Tenn. Wine*, 588 U.S. at 510. Instead, § 2 gives states the opportunity to justify discrimination by showing that "the differential treatment is *necessitated* by permissible Twenty-first Amendment interests." *Lebamoff,* 909 F.3d at 856 (emphasis in original). *See also Tenn. Wine*, 588 U.S. at 533 ("whether the challenged laws were reasonably necessary to protect the State's asserted interests").

The burden is on the State, *Granholm*, 544 U.S. at 492, and Illinois has not met it.

We start with the obvious. Online ordering and shipping of wine has become a common way to buy it. If consumers in Cairo, Illinois, want wine, they can buy it in person at a local store, order it from a local store and have it delivered, visit a winery and buy it in person at the tasting room, order it online from the winery and have it shipped, order it online from a Chicago wine store 370 miles away[12] and have it shipped, or drive across the border to a store in Paducah, Kentucky, and bring it home. It is the same wine posing the same alcohol-related health and safety risks. Ordering it from an online retailer and having it shipped is just another way of acquiring the same bottle of wine. The State has to show why it is necessary to ban only this one method of acquiring wine.

To meet this burden, the State must prove with concrete evidence that the differential treatment is reasonably necessary to address alcohol-related public health or safety issues. *Tenn. Wine*, 588 U.S. at 533, 539; *Lebamoff*, 909 F.3d at 856. It has not done so.

- Forty-four states (including Illinois) and the District of Columbia allow out-of-state wineries to sell and ship wine directly to consumers and have not reported any public health or safety problems caused by interstate sales. Facts ¶ 25. The defendants conceded in discovery that they are unaware of any actual incidents in the past three years in which wine shipped to a consumer by a licensed winery caused or was a significant factor in an alcohol-related public health or

[12]The Cairo to Chicago example was used in *Lebamoff*, 909 F.3d at 856.

safety issue such as traffic accidents, crime, workplace absenteeism, or domestic violence. *Id.*

- Fourteen states have allowed out-of-state retailers to sell and ship wine directly to consumers over the past fifteen years and they report no public health or safety problems. Facts ¶ 26. The defendants conceded in discovery that they had no evidence that interstate retail wine shipments have actually caused any alcohol-related problems in those states.
- Data from federal agencies show that states that allow out-of-state retailers to ship to consumers do not have higher rates of consumption or problematic behavior associated with alcohol such as traffic fatalities, aggravated assaults, or domestic violence. Facts ¶ 18-20.

It is also obvious that all alcohol consumption poses potential health and safety risks and that mail-order sales are harder to monitor than in-person sales. That by itself is not enough. Other states allow interstate sales and regulate them through a permit system requiring out-of-state sellers to get a permit, consent to jurisdiction, and abide by regulations that limit sales volume, require shipping reports and tax payments, allow audits, and require the use common carriers that verify age on delivery. Facts ¶31. The Supreme Court holds that "an evenhanded licensing requirement" is a reasonable alternative that can adequately "protect[] public health and safety and ensur[e] regulatory accountability." *Granholm,* 544 U.S. at 491-92. The National Conference of State Legislatures and Federal Trade Commission endorse permits as preferable to a total ban. Facts ¶ 31.

Illinois regulates every other aspect of liquor sales and distribution through licenses. *Lebamoff*, 909 F.3d at 855; 235 ILCS 5/5-1 (list of 36 alcohol licenses). Illinois issues licenses allowing mail-order sales by out-of-state wineries if they consent to the jurisdiction of the State, authorize the State to conduct audits, register under the Use Tax Act to collect and remit taxes to the Department of Revenue, and submit semi-annual reports of the total number of cases shipped. 235 ILCS 5/5-1(r). The State has presented no evidence to show that this license and reporting system which it uses everywhere else would suddenly stop being effective in this one situation.

**1. Illinois' only interests are youth access and tax collection**

A permissible Twenty-first Amendment interest is one that "regulat[es] the health and safety risks posed by the alcohol trade." *Tenn. Wine*, 588 U.S. at 535. There is no fixed list of such interests. "[E]ach State [has] leeway in choosing the alcohol-related public health and safety measures that its citizens find desirable." *Id.* at 510. We do not need to guess which interests the Illinois General Assembly has chosen because it sets them out explicitly in 235 ILCS 5/6-29.1(b):

> [T]he General Assembly hereby finds and declares that selling alcoholic liquor from a point outside this State through various direct marketing means, such as catalogs, newspapers, mailers, and the Internet, directly to residents of this State poses a serious threat to the State's efforts to prevent youths from accessing alcoholic liquor; to State revenue collections; and to the economy of this State.

The concern about the economy of the state "smacks of protectionism," *Lebamoff*, 909 F.3d at 856. which is not a permissible interest, *Tenn. Wine,* 588 U.S. at 531, so the question is whether the State can prove that its ban on shipping by out-of-state retailers is necessitated in order to prevent youth access or revenue loss.

In order to demonstrate that a discriminatory liquor law is reasonably necessary, the State must prove that the law "actually promotes public health or safety [and] that nondiscriminatory alternatives would be insufficient to further those interests." *Tenn. Wine*, 588 U.S. at 540. Meeting this burden requires concrete evidence. "'[S]peculation' and 'unsupported assertions' are insufficient to sustain a law that would otherwise violate the Commerce Clause." *Id.* at 539. The State must present enough admissible and persuasive evidence to show that the "*predominant effect* of the law is ... the protection of public health or safety," not protectionism. *Id.* at 539-40 (emphasis added).[13] "[E]vidence is crucial" in making this evaluation. *Lebamoff,* 909 F.3d at 856.

When the State allows others to engage the same activity (in this case, mail-order sales), its evidence must show why it needs to ban some mail-order sales but not others. It is not sufficient for the State to show that all mail-order sales pose some alcohol-related health or safety risk that could justify prohibiting shipping altogether. The State must show why it needs to ban one but not the others. This is a difficult burden and has been a focus of the Supreme Court's decisions.

In *Granholm*, the Court rejected Michigan's argument that a ban on direct shipping from out-of-state wineries was needed to prevent youth access because the state allowed direct shipping by in-state wineries and retailers, and "minors are just as likely to order wine from in-state producers as from out-of-state ones." 544 U.S. at 490. It rejected Michigan's argument that a ban on direct shipping to consumers was needed

---

[13] This is analogous to a preponderance of evidence standard. Predominance and preponderance mean the same thing. AM. HERITAGE DICTIONARY 1388 (5th ed. 2011).

to prevent loss of tax revenue because the state allowed the same wineries to sell directly to wholesalers and self-report their taxes. If self-reporting is adequate for wine sold to wholesalers, "there is no reason to believe [it] will not suffice for direct shipments" to consumers. *Id.* at 491. In *Tenn. Wine*, the Court rejected Tennessee's argument that a residency requirement for a liquor store owner was needed to assure responsible sales practices, in part because the state did not have "residency requirements for owners of bars and other establishments that sell alcohol for on-premises consumption." 588 U.S. at 542.

**2. The State has not shown that interstate shipping by out-of-state wine retailers would increase youth consumption or harm tax collection**

The State faces an uphill battle from the start. Youth access and tax collection are the same two interests asserted by the states in *Granholm* to justify banning interstate shipping, and the Supreme Court rejected them. 544 U.S. at 489-92. Illinois brings nothing new to the table.

**a. *Youth access*.** The *Granholm* Court rejected the youth-access argument for two reasons. First, the states had presented "little evidence that the purchase of wine over the Internet by minors is a problem" in the first place and, indeed, there was evidence to the contrary. The FTC reported[14] that states allowing direct shipping "report no problems with minors' increased access to wine." 544 U.S. at 490. Second, even if direct shipping of wine did increase the risk of underage access, "this would not justify regulations limiting only out-of-state direct shipments [because] minors are just as likely to order wine from in-state [sources]." *Id.*

[14]The report is in the record in the current case at Doc. No. 110-12.

This forecloses the youth-access argument because Illinois presented no evidence whatsoever that online ordering of wine by minors is a problem that could not be addressed through the same licensing system used for other wine shippers, nor that minors would be more likely to order from out-of-state retailers than from Illinois retailers or out-of-state wineries, both of which are allowed to make mail-order wine sales. 235 ILCS 5/5-1(d) (in-state retailers); 235 ILCS 5/5-1(r) (out-of-state wineries).

- Subsequent studies have confirmed the FTC conclusion that online wine ordering is not a significant source of alcohol by underage persons because they tend to want instant gratification rather than waiting for a shipment and can acquire alcohol more cheaply and easily from local sources. FTC Report at 33 [Doc. No. 110-12]. A national survey of youth access by the Substance and Mental Health Services Agency (SAMHSA) showed that 90% of minors obtained alcohol from friends and family and only 10% bought it themselves, which they bought at local stores, bars, restaurants or events, not online. SAMHSA Survey [Doc. No. 110-9]; Wark Report ¶¶ 15-17 [Doc. No. 110-31].
- Wine can be ordered online and shipped from out-of-state wineries in 44 states, including Illinois. Wark Report ¶ 23 [Doc. No. 110-31]. The wide availability of online ordering has not increased consumption among underage persons, which has steadily declined. In 2005, when Granholm opened the door to interstate shipping, 15-16% of 12th graders reported drinking wine. That number had gone down to 9-11% by 2019. SAMHSA Report [Doc. No. 110-8]; Wark Report ¶¶ 14 [Doc. No. 110-31].

- When Maryland stuied the effects of interstate wine shipping, it found no reports of underage access. Comptroller Study at 8 [Doc. No. 110-16].
- The State admits it has no actual evidence that minors obtain wine through online ordering and shipping. Def. Ans. To Interrog. Nos. 3-4 [Doc. No. 110-7].
- The State produced two witnesses who work for the Liquor Commission. Neither says anything about online ordering by minors. Williams only discusses on-site purchases made in person. Decl. ¶ 30 [Doc. No. 115-1 PageID 1465. Marijan does not mention minors. Decl. [Doc. No. 115-1 PageID 1478].
- The State's public health expert opined that alcohol prices affect consumption so there is a theoretical "*possibility*" that interstate shipping could lower prices and increase consumption in general, but he says nothing about youth consumption or whether there is any difference between shipping from out-of-state retailers compared to other forms of home delivery. Kerr Report ¶¶ 51-52, 56-57, 65-66, 76 [Doc. No. 110-34]. None of the studies cited in the Kerr Report say that interstate shipping increases youth consumption. See APHA letter at 4 [Doc. No. 115-2, PageID 1555]; Xuan article [Doc. No. 115-4, PageID 2274 et seq.]. What few studies exist have looked at home delivery by local retailers, not direct shipping from out-of-state sources. See APHA summary citing studies from Virginia and California [Doc. No. 115-2, PageID 1555]. Indeed, Kerr admits that there are no studies on the specific impact of direct wine shipping on alcohol consumption. Kerr Indiana Report ¶ 34 [Doc. No. 110-35].

- Dr. Kerr suggests that minors might use home delivery because of weak ID checking practices. That might be true for local deliveries that could be arranged for a time when the parents were not home, but seems unlikely for online ordering when delivery time is unpredictable. Indeed, the evidence shows that online orders are rare. A study by Zero Link/VinoShipper, which analyzed data of an estimated 634,000 attempted online wine purchases over a three-year period, discovered that minors accounted for only 943 (00.15%) of those attempts, and all were successfully identified by the IDology age verification system as underage persons. The IDology system verifies the age of attempted buyers by public records. If the purchaser's name, age, and address do not match public records for adults, the transaction is rejected. Wark Report ¶¶ 15 [Doc. No. 110-31]; O'Leary Report ¶ 34 [Doc. No. 110-32].

**b. *Tax revenue.*** The *Granholm* Court also rejected the argument that a direct-shipping ban could be justified by concerns about revenue loss. The states in *Granholm* argued that if mail-order sales were allowed, they would lose revenue because those sales bypass in-state wholesalers who are usually responsible for paying taxes. In the current case, this same concern is expressed by Kenneth Williams, a liquor control official. Williams Decl. ¶¶ 5, 10 [Doc. No. 115-1, PageID 1466 et seq].

The Court rejected the argument for two reasons. First, the Court said it was true for all kinds of direct sales, not just sales by out-of-state retailers. All "direct shipping, whether originating in state or out of state, brings with it the potential for tax evasion." 544 U.S. at 491. There was nothing unique about this one form of shipping.

Second, the Court said the argument was an irrelevant "diversion" because Michigan did not in fact require that all taxes be collected exclusively by wholesalers and did not explain why the state could not "collect[] taxes directly from [the shippers]." *Id.*

This forecloses the State's tax-collection argument because Illinois also does not collect taxes exclusively through in-state wholesalers. It allows in-state and out-of-state wineries to bypass wholesalers and sell directly to consumers and retailers and makes the shipper responsible for taxes, 235 ILCS 5/5-1(r); 11 Ill. ADC 100.420(f). They post a bond to guarantee tax payments. Marijan Decl. ¶ 24 [Doc. No. 115-1 PageID 1483]. Illinois state officials would surely know if there had been any problems collecting taxes from any licensed direct wine shipper but it presents no evidence of any such tax evasion. Nor does the State present any evidence why this same self-reporting process could not be used for out-of-state wine retailers. After all, the overall State budget depends on income taxes which we all self-report.

Forty-four states allow direct sales by out-of-state wineries, Facts ¶ 25, and fourteen states allow direct sales by out-of-state retailers. Facts ¶ 26. The State has not presented a single piece of evidence that any of them has had any difficulty getting wine shippers to remit taxes. If any such evidence existed, it would be easy to find just by asking. See correspondence between Plaintiffs' counsel and liquor regulators in seven states [Doc. Nos. 110-14, 110-15]. The only concrete evidence on tax-collection from out-of-state wine shippers is a report by the Maryland Comptroller that found no revenue loss from direct wine shipping. Report at 4 [Doc. No. 110-16]. The absence of evidence is dispositive, *Tenn. Wine,* 588 U.S. at 540, because this is the State's burden of proof. *Granholm*, 544 U.S. at 492.

**3. Other potential state interests do not justify the retailer shipping ban**

The State's witnesses have suggested a number of other potential health and safety justifications for banning mail-order sales by out-of-state retailers. None is germane because the plain language of 235 ILCS 5/6-29.1(b) says this particular law is intended only to support the State's efforts to prevent youths from accessing alcoholic liquor, assure tax collection, and protect the economy of Illinois. Under Illinois law, when the language of a statute is plain and clear, courts may not depart from that language by adding additional concepts the legislature did not include. *People v. Seymore*, __ N.E.3d __, 2025 WL 3482895, at ¶ 38 (Ill.. Dec. 4. 2025). Suggestions by the Attorney General encouraging the court to do so are to no effect. *Maddux v. Blagojevich*, 911 N.E.2d 979, 985 (Ill. 2009).

Even if this Court were to consider these other potential justifications, they would not justify banning shipments by out-of-state retailers. For one thing, most of those concerns are administrative. The State says it is harder to ensure orderly market conditions, regulatory accountability, proper record-keeping, and administrative efficiency when the shipper is located outside the state. Administrative interests have been ruled out by the Supreme Court as justifying discrimination because "facilitating orderly market conditions [and] ensuring regulatory accountability ... can also be achieved through the alternative of an evenhanded licensing requirement." *Granholm*, 544 U.S. at 492. The only kind of state interests that can justify discrimination are those that address "the health and safety risks posed by the alcohol trade." *Tenn. Wine*, 588 U.S. at 535.

The State's witnesses express three potential health and safety concerns related to the fact that the shipper is out of state.

First, the State is concerned that tainted or "dangerous" wine might get sold because state officials cannot inspect the premises of out-of-state retailers. Williams Decl. ¶¶ 28-29. This concern runs into the same problems as youth access and tax collection. Illinois already allows out-of-state wineries to make state-wide mail-order sales despite the inability to inspect their products for possible contamination and it has presented no evidence of any contaminated products and no evidence that the risk would be any higher for retailers than wineries. Dr. Kerr mentions none, and he is a public health expert who would surely know if contaminated wine were a real issue. Report ¶¶ 41-44 [Doc. No. 110-34]. Wine industry expert Tom Wark confirms:

> [T]o-date there has never been any reports of incidents of tainted wine being shipped to a consumer from an out-of-state retailer, and no state law enforcement or regulatory body has issued any statement or report that direct shipments of wine into their state from out-of-state retailers has resulted in any problem with tainted or contaminated wines.

Wark Report ¶ 35 [Doc. No. 110-31].

The State attempts to link the danger of contaminated wine to the wholesale distribution phase rather than the production phase, which seems counter-intuitive. It alludes to inspections of in-state wholesalers as the important step in identifying contaminated wine and preventing its sale, and out-of-state retailers do not get their wine from Illinois wholesalers. Williams Decl. ¶¶ 10-11 [Doc. No. 115-1, PageID 1468. This concern appears contrived because Williams' description of a wholesaler inspection does not include checking bottles for contaminated products, *id.*. ¶ 9, and

Illinois does not require all wine sales to pass through a wholesaler.[15] It freely allows the sale of wine that has bypassed the wholesale tier. Consumers may buy wine directly from the winery, 235 ILCS 5/5-1(r), and retailers may buy directly from wineries, 11 Ill. ADC 100.420, or from auctions, 235 ILCS 5/5-1(p).

Second, the State was concerned that out-of-state retailers might not be deterred from making improper sales (some of which might implicate health or safety) because, unlike in-state retailers, the state could not put them completely out of business by revoking a direct shipping permit. They could continue to operate in other states. Williams Decl.¶¶ 26-27 [Doc. No. 115-1, PageID 1772-73]. Even if Williams had any competence to testify about deterrent effects, the assertion would be irrelevant because Illinois routinely issues retail permits to stores that are parts of national chains, including Walmart,[16] even though loss of a license would not put them out of business either.

Third, the States' expert opines that wine shipped from other states with lower tax rates might possibly be cheaper and cause an increase in consumption. Kerr Report ¶¶ 50-76 [Doc. No. 110-34]. Kerr says that interstate shipping could *theoretically* lower prices, stimulate consumption, and increase consumption-related adverse social consequences. He does not say this has actually happened in any of the fourteen states that allow retailer shipping. He does not provide any concrete evidence, data or studies

---

[15]None of the statutes regulating wholesalers and retailers say all wine must pass through an Illinois wholesaler. See 235 ILCS 5/6-8; 235 ILCS 5/5(1)(b); 235 ILCS 5/5(1)(d); 235 ILCS 5/6-1.5.

[16]See Illinois Liquor License Lookup, https://ilcc.illinois.gov/resources/liquor-license-lookup (viewed Dec. 11, 2024).Walmart has stores in 49 states; https://www.walmart.com/store- directory (viewed Dec.4, 2024). The one state with no Walmart is Delaware.

showing that interstate wine shipments have in fact lowered prices, caused increased consumption, or increased any consumption-related problems anywhere. Facts ¶ 17, 27, 28, 33. Indeed, he has admitted that there are no actual studies focusing on the impact of direct wine shipping on alcohol-related problems. Facts ¶ 27. The only concrete evidence in the record shows the opposite. Data from the National Institutes of Health show that states that allow interstate retail wine sales do not have higher rates of wine consumption. Facts ¶ 19-20, 28. This is not surprising because paying the online price of the wine plus additional shipping costs is usually more expensive than buying it locally, especially considering that wine is readily available at supermarkets in Illinois for less than $5.00 a bottle. Facts ¶ 17. Besides, consumers whose consumption habits are influenced by cost can switch to less expensive products, and often do. Facts ¶ 28.

In sum, the State has failed to present sufficient admissible, relevant and concrete evidence to show that the ban on mail-order sales by out-of-state wine retailers is necessitated by any unique public health concern that could outweigh its protectionist effect. It is unconstitutional.

**IV. Remedy**

The court of appeals generally defers to the district court's choice of remedy, *Morris v. BNSF Railway Co.*, 969 F.3d 753, 767 (7th Cir. 2020), including in constitutional cases. *Preston v. Thompson*, 589 F.2d 300, 303 (7th Cir. 1978). Because the district court granted summary judgment for the State, it has not yet considered remedy. The better course is therefore to remand the case to the district court for such consideration. That would also give the parties time to work out how the Liquor

Control Commission will implement an injunction.

However, if this court decides to address the question of remedy, it should: 1) enjoin Defendants from enforcing 235 ILCS 5/6-29.1(b) as applied to out-of-state wine retailers; and 2) enjoin Defendants from enforcing 11 Ill. Adm. Code 100.480 as applied to consumers receiving shipments of wine from out-of-state retailers. That will eliminate the unconstitutional discrimination and allow out-of-state retailers to compete with in-state retailers for mail-order business. In a case like this, where the plaintiffs have been denied a privilege, the presumptively correct remedy is an injunction extending that privilege to the aggrieved parties. *See Califano v. Westcott*, 443 U.S. 76, 89-90 (1979).

In theory, at least, a court could also eliminate discrimination and level the economic playing field by striking down the provisions giving in-state retailers the right to ship wine to consumers. This is not a viable option in this case, however, because it would not grant relief to the plaintiffs' or vindicate the Commerce Clause. *See Al-Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir. 1991). It also would improperly take away shipping privileges from in-state retailers who are not represented here, *Cook, Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 744 (7th Cir. 2003), and nullify a valid portion of a state law rather than the invalid part. *See Leavitt v. Jane L.*, 518 U.S. 137, 144-45 (1996).

Plaintiffs do not seek a remedy that would require the defendants to allow unlicensed, unregulated or untaxed wine shipments. Full Pull Wines is happy to get a license akin to the winery shipping license and comply with its conditions, if state officials will make one available. Facts ¶ 5.

## Conclusion

The decision of the district court should be reversed and summary judgment granted to the plaintiffs.

Dated: January 14, 2026.

s/ James A. Tanford

James A. Tanford, *Counsel of record*
Robert D. Epstein
Epstein Seif Porter & Beutel, LLP
50 S. Meridian St., Suite 505
Indianapolis, IN 46204
Tel. (317) 639-1326
Fax (317) 638-9891
rdepstein@aol.com
tanford@iu.ed

*Attorneys for Appellants*

## Certification of Word Count

I certify that this brief, including footnotes and the statement of issues, but excluding tables and certificates, contains 11,079 words according to the word-count function of WordPerfect, the program used to prepare this brief.

s/ James A. Tanford
James A. Tanford

## Certification as to Appendix

I certify that all materials required by Cir. R. 30(a) & (b) are included in the appendix.

s/ James A. Tanford
James A. Tanford

**Appendix**

1. Judgment [Doc. No. 151] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 2

2. Memorandum Opinion and Order [Doc. No 150] . . . . . . . . . . . . . . . . . . . . . . . App. 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY FREEHAN, *et al.*,<br><br>Plaintiff(s),<br><br>v.<br><br>CYNTHIA BERG, *et al*,<br><br>Defendant(s). | Case No. 22 CV 4956<br>Judge Jeremy C. Daniel |

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: Judgment entered in favor of defendants and against plaintiffs.

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☒ decided by Judge Jeremy C. Daniel on a motion for summary judgment.

Date: 9/25/2025

Thomas G. Bruton, Clerk of Court

Vettina Franklin, Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION.

TIMOTHY FREEHAN, et al.,
Plaintiffs

No. 22 CV 4956

v.

Judge Jeremy C. Daniel

CYNTHIA BERG, et al.,
Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment. [108], [112]. The plaintiffs, out of state wine retailer Full Pull Wines, LLC and Illinois wine consumers Timothy Freehan and Joseph Grody,[1] challenge the constitutionality of the state's liquor laws which prevent out-of-state retailers from delivering alcohol to in-state consumers. They allege this violates the dormant commerce clause of the U.S. Constitution. The defendants, Illinois Liquor Control Commission members[2] and the Wine and Spirits Distributors of Illinois[3] assert the challenged laws are legitimate exercises of state power under the Twenty-First Amendment.

For the reasons given in this opinion, the Court concludes that the challenged liquor laws are constitutional and grants summary judgment in favor of the defendants.

---

1. Plaintiff Austin Marcum was dismissed with the consent of all parties. (R. 52).

2. Commissioner and Chairman of the Illinois Liquor Control Commission Cynthia Berg, along with Thomas Gibbons, Patricia Pulido Sanchez, Melody Spann Cooper, Julieta LaMalfa, Brian Sullivan, Donald O'Connell, and Steven Powell.

3. Intervening by right. (Text Order of 7/5/2022.)

## BACKGROUND

Illinois, as most states, regulates alcohol commerce using a "three tier" system. (R. 126 (Plaintiffs' Response to Defendants' Statement of Facts ("Pls.' Resp. DSOF") ¶ 11.)[4] At a high level, the system functions as follows. The state licenses three types of merchants: producers, distributors, and retailers. (*Id.*) Producers are permitted to sell alcohol to distributors. 235 ILCS 5/5-1(a). Distributors are permitted to purchase alcohol (from both in and out of state), wholesale it, store it, and sell it to licensed retailers. 235 ILCS 5/5-1(b). Retailers are permitted to purchase alcohol products from licensed distributors and sell them to Illinois consumers for consumption. 235 ILCS 5/5-1(d); (*see also* Pls.' Resp. DSOF ¶ 12.) Retailers may ship alcohol to in-state consumers. (Pls.' Resp. DSOF ¶ 17.) These licenses are predominately exclusive; with certain exceptions producers cannot distribute or retail, and so on. (*Id.* ¶ 12.)

To obtain a retail license, retailers must maintain a physical presence in Illinois. (R. 123 (Defendants' Response to Plaintiff's Statement of Facts ("Defs.' Resp. PSOF") ¶ 21.) This requirement, paired with the necessity of a retail license to ship alcohol to in-state consumers, creates the conditions to which the plaintiffs object: out-of-state alcohol sellers cannot ship to customers in Illinois and Illinois consumers cannot order alcohol from out-of-state retailers. (*Id.* ¶¶ 22–25.)

Plaintiffs Freehan and Grody are Illinois wine collectors. (*Id.* ¶¶ 1–2.) Many of the rare wines they seek to purchase are not sold by Illinois retailers. (*Id.* at ¶¶ 28–31.) To access these rare wines, the plaintiffs would have to take time off work, travel to out-of-state retailers stocking the desired wines, and bear the expense and

difficulty of transporting them home. (*Id.* at 33.) These bottles, which can cost thousands of dollars each, must be "shipped under temperature-controlled conditions." (*Id.* ¶ 31.) Both plaintiffs declare that, if allowed, they would purchase wines from out-of-state retailers. (R. 110-2 ¶ 9; R. 110-3 ¶ 9.)

Plaintiff Full Pull Wines ("Full Pull") is a Washington company that operates a licensed wine store in that state. (Defs.' Resp. PSOF ¶ 12.) The owner of Full Pull is a highly respected wine writer, and through his store, maintains an extensive, loyal, and nationwide customer base that trusts him to provide wine recommendations. (*Id.* ¶ 13–14.) Due to Illinois law, Full Pull is unable to sell to the subset of these customers who reside in the state, and has had to decline sales from Illinois residents. (*Id.* at 14–15.)

However, Full Pull does occasionally ship to Illinois residents through a third party. (R. 126 (Plaintiffs' Response to Defendant's Statement of Facts ("Pls.' Resp. DSOF") ¶¶ 22–24.) It does so by transferring title to the wine to the buyer in Washington, then routing the wine to Illinois by way of California using a third-party shipper. (*Id.*) The parties agree this process costs more than directly shipping the wines from Full Pull to an Illinois resident, and Full Pull does not pay Illinois taxes or report sales to Illinois officials. (*Id.*) The parties also agree that Full Pull would be allowed to open an Illinois retail location, acquiring the necessary license in the process, but does not wish to do so. (*Id.* ¶ 25.) If permitted, Full Pull would sell and ship wine directly to Illinois consumers. (*Id.* ¶ 6.)

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, the Court "construe[s] all facts and draw[s] all reasonable inferences in the nonmoving party's favor, but the moving party may prevail 'by showing an absence of evidence to support' the nonmoving party's claims." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (quoting *Tyburski v. City of Chi.*, 964 F.3d 590, 597 (7th Cir. 2020)). While the Court must give the nonmoving party "the benefit of reasonable inferences from the evidence," it does not construe "speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). "Where, as here, the parties file cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017) (citing *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015)).

## ANALYSIS

### I. Prior Decisions on Three-Tier Alcohol Regulatory Systems

States are normally forbidden from discriminating against interstate commerce, but the Twenty-First Amendment grants states the power to "maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Granholm v. Heald*, 544 U.S. 460, 484 (2005). Accordingly, section 2 of the amendment prohibits the "transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof." This section means that states may impose discriminatory regulatory schemes on alcohol sales if they "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Granholm*, 544 at 489 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)).

In *Granholm*, the Supreme Court invalidated New York and Michigan laws that prevented out-of-state, but not in-state, wineries from selling direct-to-consumer without passing through their three-tier systems for alcohol distribution. *Id.* at 473–75. The Court concluded that section 2 of the Twenty-First Amendment does not allow states to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers. *Id.* at 476. New York and Michigan argued their laws functioned to reduce underaged drinking and enable tax collection, but the Court rejected these rationales. *Id.* 489–92.

Following *Granholm*, an Indiana wine store, its owner, and a would-be customer, challenged the same Illinois laws at issue here. *Lebamoff Enters., Inc. v. Rauner*, 909 F.3d 847, 849-50 (7th Cir. 2018). The district court dismissed the suit as a futile challenge to the three-tier system altogether. *Id.* The Seventh Circuit reversed. The circuit concluded that plaintiffs alleged a viable dormant commerce clause violation, and further concluded that "limiting licenses to in-state storefronts ... once the license allows a store to ship product anywhere within the state, [yet] refusing to extend that privilege to out-of-state businesses is facially discriminatory." *Id.* at 852–53. Thus, the district court should have "asked whether Illinois has justified requiring an in-state presence for retailers now that it allows state-wide mail-order sales," an "inquiry [that] is ill-suited for the motion to dismiss stage." *Id.* at 855–56. After remand, *Lebamoff Enterprises* never reached an answer to that question; the plaintiffs went bankrupt or fell ill, leading to a premature dismissal. (R. 109 at 2 n.3.)

The Supreme Court next returned to section 2 in 2019, invalidating Tennessee's requirement that applicants for retail liquor store licenses must have resided in the state for two years before applying. *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 539 (2019). Again, the Court determined that discriminatory alcohol regulations were only permissible under section 2 if justifiable on "public health or safety measure or on some other legitimate nonprotectionist ground," but "where the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by § 2." *Id.* at 539–40,.

After *Tennessee Wine*, the Seventh Circuit took up another challenge to alcohol shipping laws. In *Chicago Wine Co. v. Braun,* the court affirmed the constitutionality of an Indiana law preventing "retailers of alcoholic beverages located outside the State from shipping wine to Indiana consumers." 148 F.4th 530, 531 (7th Cir. 2025). There was no majority opinion in *Chicago Wine* because "Judge Kanne, a member of the panel at the time of argument, died" before the opinion was released, and the other members split as to their reasoning. *Id.* at 531 n.*. Judge Easterbrook would have held the challenged Indiana law did not discriminate against out-of-state retailers, while Judge Scudder concluded the law did discriminate, but was nevertheless justifiable under *Tennessee Wine*. *Id.* at 534, 544–45. Because *Chicago Wine* was decided after the cross-motions for summary judgment in this case were fully briefed, the Court invited supplemental briefing on its impact. (R. 144.)

Similar challenges to other states' prohibitions on the shipment of alcohol from out of state merchants directly to consumers have fared no better in the aftermath of *Tennessee Wine*. The Third, Fourth, Sixth, Eighth, and Ninth Circuits have all rejected these challenges, finding either that the restrictions were not discriminatory,[5] or were justifiable elements of a state's three-tiered alcohol regulatory framework.[6]

---

*5. Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1184 (8th Cir. 2021) ("[I]impose[ing] the same licensing requirements on in-state and out-of-state retailers ... do not discriminate against out-of-state retailers and wholesaler").

*6. Jean-Paul Weg LLC v. Dir. of N.J. Div. of Alcoholic Beverage Control*, 133 F. 4th 227, 231 (3d Cir. 2025); *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 216 (4th Cir. 2022); *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 867 (6th Cir. 2020); *Day v. Henry*, 152 F.4th 961 (9th Cir. 2025) (*en banc*).

Only the First Circuit has reversed a district court's decision upholding state

liquor laws. There, plaintiffs challenged a Rhode Island requirement restricting retail liquor licenses to in-state individuals and businesses. *Anvar v. Dwyer*, 82 F.4th 1, 5 (1st Cir. 2023). The First Circuit concluded this was discriminatory and remanded for the taking of additional evidence on whether Rhode Island's policy could be justified as advancing a legitimate local purpose that could not be adequately served by reasonable nondiscriminatory alternatives. *Id.* at 9–10.

## II. The Plaintiffs' Case for Relief from Illinois' Three-Tier System

### A. Standing

The Court begins, as it must, with the question of standing. *Tierney v. Advoc. Health & Hosps. Corp.*, 797 F.3d 449, 450 (7th Cir. 2015) (standing is a "threshold issue"). The defendants argue that the plaintiffs do not have standing because their requested relief is unavailable; the Court cannot clear the way for wine shipment from Washington to Illinois. (R. 113 at 28.) The laws of both states allegedly block delivery of alcohol from out of state, even if the challenged prohibitions are struck down. (*Id.* at 29) Starting with Illinois law, the defendants identify the "come to rest" requirement as prohibitive. (*Id.*) This provision requires that imported alcohol must be "off-loaded" from the vehicle that brought it into the state and stored at the "licensed premises of the importing distributor." 235 ILCS 5/6-8. Therefore, alcohol shipped to Illinois consumers from an out-of-state retailer must take the following journey: from manufacturer or producer to Illinois distributor, where it comes to rest, then to out-of-state retailers, then back into the state to the end consumer. (R. 113 at

29.) But, according to the defendants, Illinois distributors cannot sell to out-of-state retailers, so even if Full Pull could ship to Illinois, it could not buy shippable alcohol, rendering relief unavailable to plaintiffs. (*Id.*)

The defendants also argue that a similar Washington law prevents Full Pull from buying from Illinois distributors, but they have implicitly conceded the issue. According to the defendants, Washington retailers can only buy from Washington distributors. (*Id.* at 29–30 (citing RCW 66.44.160.)) In response, the plaintiffs argue that RCW 66.24.179 permits licensing Washington wine retailers to "deliver ... to lawful purchasers outside the state." (R. 124 at 3.) The defendants assert this is a "*non sequitur*" but do not dispute that plaintiffs are correct on Washington law. (R. 129 at 16.) From this, the Court concludes that it does not need to address Washington law further to potentially grant the plaintiffs the relief they seek.

Returning to Illinois, if the Court decides Illinois' alcohol regulations are unconstitutional, it is not limited to striking down only the explicitly challenged provisions. *See Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 948 (7th Cir. 2006) ("Rule 54(c) of the civil rules entitles a prevailing plaintiff to the relief proper to his claim even if he did not request that relief ...."). The Court may, if it decides the plaintiffs prevail on the merits, clear the way for Full Pull to ship into Illinois, striking down whichever elements of Illinois' regulatory scheme stand in the way. As such, the Court may grant the plaintiffs the relief they seek, and it follows that the plaintiffs do have standing. Accordingly, the Court will proceed to the merits.

B. Merits

Turning to the merits, the Court asks three questions. First, is the challenged law discriminatory? *Lebamoff Enters.*, 909 F.3d at 851. Second, can the law be justified on a legitimate, non-protectionist ground? *Tenn. Wine*, 588 U.S. at 539, 139 S.Ct. 2449. Third, can the regulatory objective be "easily [ ] achieved by ready alternatives," *id.* at 540, 139 S.Ct. 2449, or, as the Supreme Court has also put it, does the regulatory regime "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives"? *Granholm*, 544 U.S. at 489, 125 S.Ct. 1885 (quoting *New Energy Co. of Ind.*, 486 U.S. at 278, 108 S.Ct. 1803.)

1. The Challenged Law Is Discriminatory

The Court concludes that the challenged law is discriminatory. Under Illinois law, an in-state alcohol retailer can ship to consumers statewide, but an out-of-state retailer cannot. (Defs.' Resp. PSOF ¶ 22–25.) The defendants urge the Court to follow Judge Easterbrook and conclude that, because the law "impose[s] costs equally on in-state and out-of-state ... businesses [it] is nondiscriminatory." *Chi. Wine Co.*, 148 F.4th at 533 (Easterbrook, J., concurring). But the Court finds Judge Scudder's concurrence more persuasive; he reasoned that the Supreme Court has classified similar regulatory regimes as the one at issue here as discriminatory. *Id.*, 538–39 (Scudder, J., concurring). The Court also views itself bound by the Seventh Circuit's prior conclusion that this law "distinguishes between in-state and out-of-state parties for purposes of the right to ship to Illinois residents" and therefore is "facially discriminatory." *Lebamoff Enters.*, 909 F.3d at 852–53.

### 2. The Challenged Law Can Be Justified on Legitimate Nonprotectionist Grounds

At step two, the defendants must offer some evidence that "the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Tenn. Wine*, 588 U.S. at 539, 139 S.Ct. 2449. This evidence must be "concrete." *See id.* at 540, 139 S.Ct. 2449 ("[T]he record is devoid of any 'concrete evidence' " that the challenged requirements "promotes public health or safety." (quoting *Granholm*, 544 U.S. at 490, 125 S.Ct. 1885)); *see also Jean-Paul Weg LLC*, 133 F.4th at 236–37 (upholding conclusion that challenged requirements had "concrete evidence" justifying them); *Anvar*, 82 F.4th at 8 (reviewing challenged requirements for concrete evidence). Here, the defendants offer several rationales to defend the challenged laws.

First, licensing. To obtain a retail license in Illinois, retailers must first pass a background check and premise inspection by local authorities. (Pls.' Resp. DSOF ¶ 29.) The defendants argue that the state of Illinois does not have sufficient employees in its licensing division to perform the required background checks and inspections on licensees in states where state, not local, agencies perform these functions. (R. 113 at 6.) This is not a compelling argument in light of *Granholm*. There, the Court rejected similar arguments of "regulatory accountability" because "improvements in technology have eased the burden of monitoring out-of-state wineries. Background checks can be done electronically. Financial records and sales data can be mailed, faxed, or submitted via e-mail." 544 U.S. at 492, 125 S.Ct. 1885.

Next, the defendants argue that funneling all alcohol sold in the state through wholesalers is a "core component" of Illinois' regulatory scheme. (R. 113 at 6.) Restricting alcohol sales to in-state retailers allows the state to effect bans on "certain alcohol products that it has determined to be unsafe or that target underage drinking." (*Id.* at 7.) Such products include "alcopop" products which are particularly attractive to underage drinkers, as well as improperly labelled caffeinated-alcohol products. (*Id.*) According to the defendants, the three-tiered system also allows the state to control the price of alcohol as a tool to temper consumption and demand in the state. (*Id.* at 9.) Last, the defendants argue that the threat of license revocation is an effective tool to enforce Illinois state laws and regulations. An in-state retailer whose license is revoked can no longer sell alcohol and is stuck with unsellable product. (*Id.* at 10.) This potential does not exist for out-of-state retailers, who can sell their products locally even if they lose the privilege of selling into Illinois. (*Id.*)

The defendants support their arguments with affidavits from Kenneth Williams, a Liquor Control Supervisor with the Illinois Liquor Control Commission ("ILCC"), (R. 115-1 at 139); Dusanka Marijan, a license administrator with the ILCC, (R. 115-1 at 151); and the expert report of William C. Kerr, Ph.D., (R. 115-1 at 160.) Williams and Marijan aver as to the way the three-tiered system allows them to easily and effectively monitor the flow of alcohol into and throughout Illinois, and the difficulty that monitoring out-of-state retailers would entail. For example, in Williams' affidavit, he states that all sales to retailers from wholesalers are tracked on an electronic database for tracing and taxation purposes. (R. 115-1 at 142.) Using

these records, state inspectors can conduct physical onsite inspections to see if retailers are obtaining alcohol from unlicensed sources. (*Id.* at 143.) The ILCC aspires to inspect every licensee twice a year, but due to staff shortages, inspections occur once a year, totaling "nearly 12,000" inspections a year (*Id.* at 142.) Williams estimates one in twenty inspections discovers retailer violations of Illinois alcohol sourcing laws. (*Id.* at 143)

Williams goes on to state that the ILCC would face "extreme[ ] difficult[ies]" monitoring and regulating out-of-state retailers, due to "geographic, budgetary, [and] manpower" constraints. (*Id.* at 144.) He also discusses the effectiveness of the ILCC's covert, in-person, enforcement efforts to combat underage drinking, which are reportedly "extremely effective." (*Id.* 146–47.) The plaintiffs largely admit the accuracy of Williams' and Marijan's statements as to the current state of affairs while disputing the impacts of their sought policy change. (Pls.' R. DSOF ¶¶ 36–50.) The Court finds these regulatory arguments distinct from the ones rejected in *Granholm* because they cannot be eased by technological advances. Regulators cannot check electronically if a store is selling improperly sourced alcohol, nor electronically see if a store will sell to underaged buyers. Physical inspection is required, and therefore these concerns provide a concrete basis for Illinois' regulatory scheme.

Turning to Dr. Kerr's report, he opines on the economic effects of alcohol taxation. According to Dr. Kerr, the state of Illinois generates approximately $280 million annually from excise taxes on alcohol, which are approximately five or six times higher than those of neighboring states. (R. 115-1 at 173–75.) These taxes serve a number of public health and safety goals in the state by increasing the price of and

reducing the demand for alcohol. (*Id.* at 176.) According to Dr. Kerr, the economic literature on alcohol taxation repeatedly finds that changes in alcohol taxes cause commensurate changes in drunk driving, domestic violence, and alcohol related mortality. (*Id.* at 176–78.) For example, a statewide increase in alcohol taxes reduced in-state drunk driving incidents by a quarter. (*Id.*)

The plaintiffs attempt to challenge Dr. Kerr's conclusions with little more than attorney arguments rooted in in-brief calculations. (*See* R. 124 at 15.) For example, the plaintiffs argue that the impact of Illinois taxes on a bottle of wine are at most 2% of the price, and therefore it is “inconceivable” that Dr. Kerr's conclusions are correct. (*Id.*) The Court is not inclined to credit counsel in this matter over Dr. Kerr's expertise and data, especially when Dr. Kerr's report on this matter has been deemed admissible, and the plaintiffs’ expert reports here have been largely excluded. (*See* R. 105 (denying the plaintiffs’ motion to exclude Dr. Kerr's expert report, but excluding the plaintiffs’ expert reports on the health and safety impacts of alcohol taxation and admitting only those parts relevant to the income generated by those taxes).)

In sum, the defendants have put forth sufficient concrete evidence to support the three-tier system on legitimate, non-protectionist ground. These grounds are 1) the central control provided by the three-tiered system over alcohol pricing and sales in the state, 2) enabling that control by permitting efficient oversight of licensed alcohol sellers (including both assurances that sellers obtain alcohol through the proper channels and sell to of-age buyers), and 3) the public health and safety benefits obtained through Illinois’ ability to control the price of, and therefore the demand for, alcohol in the state. This provides ample public safety grounds on which Illinois

justifies its three-tiered system, and the state compellingly argues that a Court-imposed restructuring, as the plaintiffs request, would seriously undermine the ability of state regulators to maintain this system. In drawing these conclusions, the Court is expressly following Judge Scudder's concurrence in *Chicago Wine*, where he concluded that Indiana's law, similar to the law at issue here, could be justified because it allowed that state to ensure compliance with state law, promote temperance, and combat underage drinking. 148 F. 4th at 541–43.

**3. No Easy Alternatives Exist**

The Court now considers whether there are easy, non-discriminatory alternatives that would allow the state to preserve its interests. *See Tenn. Wine*, 588 U.S. at 540, 139 S.Ct. 2449. There are not. The plaintiffs identify a number of ways in which these state interests could be met outside of the three-tiered system but fail to persuade the Court they would be easy. The plaintiffs argue that Illinois can tax out-of-state alcohol when it is shipped into the state, and require shippers to post bonds to ensure the collection of those taxes. (R. 124 at 17). Furthermore, the plaintiffs argue that the ILCC can conduct audits and inspections of extra-state shippers to ensure compliance with Illinois law. (*Id.*) These actions may be possible, but the Court is not convinced that they would be easy. The plaintiff is effectively arguing that the Court should compel the state to stand up a whole external taxation and inspection arm of its Liquor Control Commission, to address on an ad-hoc basis any alcohol seller who wished to ship into Illinois from out of the state. This would be a quintessential exception that would swallow the rule of the three-tiered system, and

it is neither an easy alternative to the existing regulatory scheme in the state nor a

reasonable nondiscriminatory alternative.

The Court is further convinced that the requested relief would not be an easy alternative to the existing alcohol regulations by the potential necessity to strike down more than just the expressly challenged law. As discussed above when considering whether the plaintiffs have standing, current law bars Illinois wholesalers from selling to out of state, and restricts Illinois retailers from selling alcohol not obtained from Illinois wholesalers. (R. 113 at 29.) Granting the plaintiffs the relief they seek would require doing away with these provisions of the Illinois regulatory scheme as well, doing further damage to the three-tiered system with unclear effects. Again, this is not an easy alternative to the current state of affairs.

Accordingly, the Court finds that while Illinois' rules on shipping alcohol to consumers do discriminate against out-of-state sellers, the regulatory scheme is nevertheless justifiable on public health and regulatory efficiency grounds, and no "easy" alternative exists. As such, summary judgment is appropriate for the defendants.

## CONCLUSION

The defendants' motion for summary judgment [112] is granted, and the plaintiffs' motion for summary judgment [108] is denied. Civil case terminated.

Date: September 25, 2025

s/ Jeremy C. Daniel
JEREMY C. DANIEL
United States District Judge